MDL 1586

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

NOV 20 2003

FILED
CLERK'S OFFICE

**BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

PLEADING NO. 26

| | |
|---|---|
| IN RE MUTUAL FUND INVESTMENT LITIGATION ) | MDL Docket No. 1586 |

**RESPONSE OF THE BANK OF AMERICA DEFENDANTS IN SUPPORT OF THE MOTION BY THE CANARY PARTIES TO CENTRALIZE ALL MUTUAL FUND TIMING CASES IN ONE DISTRICT**

Bank of America Corporation ("Bank of America"), Bank of America, N.A., Banc of America Capital Management, LLC, Banc of America Advisors, LLC,[1] and Banc of America Securities, LLC (collectively, the "Bank of America Defendants") respectfully submit this memorandum in support of the Canary Parties' motion to have all mutual fund timing cases pending against all mutual fund families transferred to and coordinated in the Southern District of New York.

RECEIVED
CLERK'S OFFICE
2003 NOV 19 A 11:41
JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

1 Effective January 1, 2003, Banc of America Advisors, LLC was renamed BACAP Distributors, LLC.

OFFICIAL FILE COPY

IMAGED NOV 24 '03

## INTRODUCTION

As set forth in detail in their response to the motion for transfer and consolidation submitted by plaintiff Jean Marie Maggi in MDL No. 1585,[2] the Bank of America Defendants believe that all the cases pending against them concerning alleged "market timing" and "late trading" in mutual funds should be transferred to and consolidated in the Southern District of New York pursuant to 28 U.S.C. § 1407. In addition, the Bank of America Defendants agree with the position of the Canary Parties in MDL No. 1586, who contend that all "market timing" and "late trading" actions involving all fund families (i.e., even those cases in which the Bank of America Defendants are not parties) should be transferred to and coordinated for pre-trial purposes before a single judge in the Southern District of New York.

## ARGUMENT

### 1. The Bank of America Defendants Agree with the Canary Parties' Position.

The Bank of America Defendants support the position set forth by the Canary Parties and agree that there are potential benefits to be gained from coordinating all the various mutual fund family trading cases together before a single judge. In particular, assigning these cases to a single judge in a single forum will promote sound organization and will avoid conflicting rulings and duplicative demands on the various parties, especially with respect to discovery.

The approach advocated by the Canary Parties, i.e., the transfer of all the cases concerning all the various mutual fund families to a single judge, leaves open the ability of parties to ask the transferee judge for separate treatment of their cases within the MDL proceedings before that judge, as this Panel has previously recognized may be appropriate. See, e.g., In re WorldCom, Inc. Sec. & "ERISA" Litig., 226 F. Supp. 2d 1352, 1354-55 (J.P.M.L. 2002) (trans-

2 Filed with this Panel on November 5, 2003.

feree judge "remains free to establish separate tracks for discovery and motion practice in any constituent . . . actions, whenever she concludes that such an approach is appropriate"); In re AOL Time Warner Inc. Sec. Litig., 235 F. Supp. 2d 1380, 1381 (J.P.M.L. 2002) (transferee judge has discretion over extent of coordination and consolidation of the transferred actions).

**2. The Southern District of New York is the Appropriate Transferee Forum.**

The Bank of America Defendants also agree with the Canary Parties that the appropriate transferee forum for the mutual fund trading cases is the Southern District of New York (to the extent that they are not pending there already). As detailed below, the investigations into mutual fund trading being conducted by New York State Attorney General Eliot Spitzer and the Securities and Exchange Commission ("SEC") are centered in the Southern District of New York; the Southern District of New York is best suited to accomplish the goals of 28 U.S.C. § 1407 by minimizing the cost and disruption to all concerned; and the Southern District of New York has particular expertise in the area of securities litigation.

A. The investigations of Attorney General Spitzer and the SEC into mutual fund trading are centered in New York.

Attorney General Spitzer's investigation into mutual fund trading is based out of and focused in the Southern District of New York. In addition, the SEC's investigation is based out of its New York office, again demonstrating that the locus of the activities with respect to mutual fund trading is New York City, i.e., the Southern District of New York. In analogous situations, the Panel has indicated that the presence of regulatory proceedings in a given district weighs heavily in favor of transferring follow-on civil litigation to the district in which those regulatory proceedings are pending. See, e.g., In re Medical Waste Servs. Antitrust Litig., 277 F. Supp. 2d 1382, 1383 (J.P.M.L. 2003) (District of Utah is appropriate forum for transfer because "the attorney general of the state investigated the alleged antitrust conduct at issue and

reached a settlement with the defendants"); In re Adelphia Communications Corp. Sec. & Deriv. Litig., 273 F. Supp. 2d 1353, 1355 (J.P.M.L. 2003) (transferring cases under 28 U.S.C. § 1407 to the Southern District of New York, even though the majority of the actions were pending in Pennsylvania, because SEC enforcement action was pending in Southern District of New York); In re WorldCom, 226 F. Supp. 2d at 1355 (transferring cases to Southern District of New York in part because that district was "the venue for other important WorldCom legal proceedings (including WorldCom's bankruptcy case, a civil suit by the Securities and Exchange Commission, [and] criminal complaints brought by the United States . . . )").

Indeed, when this Panel was recently asked to choose a forum for the coordination of multidistrict litigation arising out of another of Attorney General Spitzer's investigations, this Panel selected the Southern District of New York. See In re Merrill Lynch & Co. Research Reports Sec. Litig., 223 F. Supp. 2d 1388, 1390 (J.P.M.L. 2002) (Panel selects Southern District of New York for MDL proceedings arising out of Attorney General Spitzer's probe of broker-dealer stock ratings).

B. The preponderance of the Bank of America Defendants' witnesses and documents are located in the Southern District of New York.

In addition, at least with respect to the cases pending against the Bank of America Defendants, most of the allegations concern individuals based in New York City. For example, three former employees of the Bank of America Defendants, Robert Gordon, Charles Bryceland, and Theodore Sihpol, are named in at least eight of the complaints targeted at the Bank of America Defendants, and are the targets of various allegations in these complaints. These three individuals all worked at Bank of America offices in New York City during the relevant time. In addition, Canary is based in Secaucus, New Jersey, just across the Hudson River from New York City, and Edward Stern, Canary's managing partner, is a resident of New York. Thus, many of

the potential witnesses are located in or close to the Southern District of New York, and many of the documents likely to be sought by the plaintiffs in discovery are also located in or close to the Southern District. The location of relevant witnesses and documents thus supports transfer to the Southern District of New York. See, e.g., In re Salomon Bros. Treas. Sec. Litig., 796 F. Supp. 1537, 1538 (J.P.M.L. 1992) (transferring cases to the forum where the preponderance of documents and witnesses were located); In re Air Crash Disaster at Stapleton Int'l Airport, 683 F. Supp. 266, 267 (J.P.M.L. 1988) (transferring cases to the forum where relevant witnesses and documents were located); In re West Coast Bakery Flour Antitrust Litig., 368 F. Supp. 808, 809 (J.P.M.L. 1974) (same).

C. The Southern District of New York has special expertise in the area of securities litigation.

By virtue of having Wall Street, the New York Stock Exchange and many of the United States' key financial markets and institutions within its geographic boundaries, the Southern District of New York has developed a special expertise in securities litigation. This Panel has previously acted in recognition of this expertise. See, e.g., In re IPO Sec. Litig., 277 F. Supp. 2d 1375, 1377 (J.P.M.L. 2003) (Panel selects Southern District of New York for MDL proceedings in complex securities litigation); In re Global Crossing Ltd. Sec. & "ERISA" Litig., 223 F. Supp. 2d 1384, 1386 (J.P.M.L. 2002) (same). In addition, as previously recognized by this Panel, the Southern District of New York has the resources necessary to handle complex multidistrict securities litigation such as this. See, e.g., In re AOL Time Warner, 235 F. Supp. 2d at 1381 (Panel favors litigation of complex securities fraud cases in the Southern District of New York, which "possesses the necessary resources to be able to devote the substantial time and effort to pretrial matters that this complex docket is likely to require").

* * * * *

For these reasons, as well as the reasons set forth by the Canary Parties, should this Panel adopt the Canary Parties' approach, the most logical district for such a unified pretrial proceeding involving all the various mutual fund families would be the Southern District of New York. Proposed forums based upon the location of the headquarters for a particular fund family — such as the Eastern District of Wisconsin (Strong Funds) or the District of Colorado (Janus Funds) — are not logical for a single unified proceeding involving all fund families, where convenience for all fund families and all witnesses should be taken into consideration. In this respect, it is important to note that the entities associated with three of the major fund families targeted by these suits — Janus, Bank One, and Bank of America — have all requested the Southern District of New York as the transferee forum, as have the Canary Parties.

**3. The Central District of California and the District of New Jersey are Less Appropriate as Transferee Fora than the Southern District of New York.**

In papers filed in response to the Maggi Motion, plaintiffs in three actions (all represented by the same law firm, Milberg Weiss Bershad Hynes & Lerach LLP) pending against the Bank of America Defendants argue that the Central District of California or, as a second choice, the District of New Jersey are more appropriate transferee fora than the Southern District of New York for the cases pending against the Bank of America Defendants, and perhaps all the mutual fund families. See Response of the Cohen, Rohrer, and Sussman Plaintiffs to the Maggi Motion at 2-3. The Bank of America Defendants, however, respectfully submit that the Southern District of New York is the most appropriate and convenient location for all involved.

First, there is no basis whatsoever on which to transfer these cases to the Central District of California. While certain of the Bank of America Defendants have offices in Los An-

geles, there is absolutely no connection between any of these offices and the alleged improper conduct set forth in the complaints against the Bank of America Defendants. And while plaintiffs' counsel makes unsupported statements such as the Central District of California being "where the most witnesses and relevant documents are most likely located," see Memo. in Support of Motion of the Nations Lead Plaintiff Movants in Lin v. Bank of America Corp. at 3 (Exhibit A hereto), this is simply not the case. As is set out in detail in the Bank of America Defendants' Response to the Maggi Motion (at 12-16), plaintiffs have made no specific allegations of improper conduct in the Central District of California (while making numerous allegations concerning New York-based individuals), and provide no support for their claims that the factual locus of these actions is somehow in the Central District of California.

Moreover, should this Panel adopt the Canary Parties' approach of coordinating cases involving all fund families, the Central District of California would be an even less appropriate venue, as, to the best of the Bank of America Defendants' knowledge, no cases are pending in the Central District of California with respect to any fund family other than Bank of America's Nations Funds family.

Second, transfer of the cases to these plaintiffs' "second-choice" forum, the District of New Jersey, is equally unwarranted. The cases pending in federal court against the Bank of America Defendants are primarily spread over three districts: the Southern District of New York (with six cases); the District of New Jersey (with five cases);[3] and the Central District of

[3] The Bank of America Defendants have been informed by plaintiffs' counsel in Garfield v. Banc of America Capital Management, LLC, et al., No. 03-cv-4855 (D.N.J.), that an amended complaint in which the Bank of America Defendants are no longer named as defendants has been filed in that action. Thus, there are now only five actions pending against the Bank of America Defendants in the District of New Jersey, as opposed to the six listed in Exhibit 1 to the Bank of America Defendants' Response to the Maggi Motion in MDL No. 1585.

California (with four cases, one of which was removed from state court). Given this distribution of cases — including that there are now more cases pending against the Bank of America Defendants in the Southern District of New York than in any other district — the fact that there are a number of cases pending against the Bank of America Defendants in the District of New Jersey (and, for that matter, the Central District of California) should have no impact on this Panel's decision-making process, especially considering that 46 of the 127 cases listed by the Canary Parties in their Motion and in their later-filed Notice of Related Actions are pending in the Southern District of New York, with no other district having more than 23 pending actions.

These plaintiffs' basis for advocating the District of New Jersey as an alternative transferee forum is the presence of some of the Canary Parties in Secaucus, New Jersey. However, the Canary Parties themselves — who one would expect to be the most sensitive to the alleged convenience to them of the District of New Jersey — in fact want the transferee forum to be the Southern District of New York. Secaucus is located directly across the Hudson River from New York City, and in fact is geographically closer to the Southern District of New York's courthouses in New York City than to any District of New Jersey courthouse; the District of New Jersey's courthouse in New Jersey's capital city of Trenton, for example, is more than nine times further away. As Canary itself has represented, the Southern District of New York is thus more convenient to even the Canary Parties than is the District of New Jersey. See 28 U.S.C. § 1407 (transfer of cases permitted for "convenience of parties and witnesses"); In re IPO Sec. Litig., 277 F. Supp. 2d at 1377 (selecting Southern District of New York as transferee forum because, among other things, it was "conveniently located" for the parties).

Nor can the plaintiffs in the actions brought in the District of New Jersey argue that the other cases should be transferred to the District of New Jersey for their own conven-

ience. Based on their complaints, there is no evidence that any of the plaintiffs in the actions pending in the District of New Jersey actually reside in the state of New Jersey. See Bode complaint, introduction (plaintiff lives in Missouri); Golisano complaint, introduction (plaintiff lives in Florida); Solvibile complaint ¶ 5 (plaintiffs live in Pennsylvania); Finnell New Jersey complaint ¶ 5 (plaintiff lives in Georgia); Rohrer complaint (plaintiff's residency not provided).[4] (There is also no indication from their complaints that any of the plaintiffs asking for transfer to the District of New Jersey or the Central District of California have any connection to either of those districts. See Sussman complaint at 30 (Sussman resides in Maryland; other plaintiff's residency not provided); Cohen complaint (plaintiff's residency not provided); Rohrer complaint (plaintiff's residency not provided).)

And the fact that certain plaintiffs (or plaintiffs' law firms) chose to file their cases in the District of New Jersey (or the Central District of California) should be given little weight under the circumstances. As has been held in the context of transfers under 28 U.S.C. § 1404(a), which (like 28 U.S.C. § 1407) focuses on the "convenience of parties and witnesses," when a plaintiff is attempting to pursue a class action or a derivative action, that plaintiff's choice of forum should be given "less weight" than would be given to the choice of forum by a plaintiff pursuing an individual action. Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987); see also Warrick v. General Electric Co., 70 F.3d 736, 741 n.7 (2d Cir. 1995) ("plaintiff's choice of forum is a less significant consideration in a . . . class action than in an individual action"). This rule is eminently sensible, especially in the context of an MDL proceeding, where the goal is to achieve efficiency and convenience based on such factors as the location of rele-

4 Copies of these complaints were included as exhibits to the Bank of America Defendants' Response to the Maggi Motion in MDL No. 1585.

vant documents and witnesses — not to permit plaintiffs to influence the selection of an MDL forum in a manner that they perceive as favorable to their interests simply by filing a class action or derivative complaint in one federal district or another, no matter what that district's connection is to the underlying facts being alleged.

The Southern District of New York is also more convenient for counsel in these actions. Counsel for the Canary Parties is based in New York City, as is counsel for the Bank of America Defendants, Strong and Bank One, and the law firms representing Alliance and Janus both have substantial New York City offices. Moreover, in the five cases pending against the Bank of America Defendants in the District of New Jersey, four of the complaints (Golisano, Finnell, Rohrer, and Bode) list New York counsel for the plaintiff. At the same time, of the six cases pending against the Bank of America Defendants in the Southern District of New York (Cohen, Wahl, Weaver, McKoy, Maez, and Desch), not one of them lists New Jersey counsel for the plaintiff. Thus, from the perspective of plaintiff's counsel as well, the Southern District of New York appears to be considerably more convenient than the District of New Jersey.

In addition, as noted above and in their Response to the Maggi Motion in MDL No. 1585, many of the likely witnesses of the Bank of America Defendants, and many of the documents likely to be sought in discovery, are located in the Southern District of New York, the investigations of Attorney General Spitzer and the SEC are based in the Southern District of New York, and the Southern District has particular expertise with respect to complex securities matters such as these. For these reasons, the Bank of America Defendants respectfully submit that, whether the Bank of America cases are grouped independently or along with all the cases concerning other mutual fund families, the Southern District of New York is the appropriate transferee forum.

**4. All the Cases Pending against the Bank of America Defendants should be Transferred to the Southern District of New York**

In Exhibit 1 to their Response to the Maggi Motion in MDL No. 1585, the Bank of America Defendants listed seventeen actions pending against them in federal court with respect to alleged improper trading in mutual funds. Since the Bank of America Defendants filed their Response to the Maggi Motion, they have become aware of two additional actions (both filed in the Southern District of New York) that are related to those actions previously listed: Maez v. Nations Institutional Res. Convertible Sec. Fund, et al., No. 03-cv-8745 (S.D.N.Y.), and Desch v. Bank of America Corp., et al., No. 03-cv-8710 (S.D.N.Y.).[5] In addition, the Bank of America Defendants have been dropped as defendants in one action, Garfield v. Banc of America Capital Management, LLC, et al., No. 03-cv-4855 (D.N.J.). See note 3, supra.

For the reasons set forth in their Response to the Maggi Motion and because all of these cases involve common questions of fact, the Bank of America Defendants believe that all the cases pending against them, including the Maez and Desch actions, and any other cases filed against them involving common questions of fact, should be transferred to the Southern District of New York to the extent that they are not pending there already.[6] See 28 U.S.C. § 1407 (transfer appropriate when cases involve "one or more common questions of fact"); In re AOL Time Warner, 235 F. Supp. 2d at 1381 (transfer appropriate when "[a]ll actions share factual questions

[5] The Bank of America Defendants intend to file a notice with this Panel concerning these two cases and any other related or potential "tag-along" actions that have been filed or that are filed against the Bank of America Defendants.

[6] On November 13, 2003, the Canary Parties submitted a Notice of Related Actions to this Panel. This Notice listed 66 additional actions pending against various mutual fund families that were not included in the Canary Parties' initial list of 61 actions submitted with their motion, including 11 additional actions pending against the Bank of America Defendants. The Bank of America Defendants agree with the Canary Parties that these 11 additional cases are all related to the actions pending against the Bank of America Defendants on the Canary Parties' initial list of 61 cases.

arising out of alleged misrepresentations and omissions . . . concerning accounting practices"); In re Alert Income Partners Sec. Litig., 788 F. Supp. 1230, 1231 (J.P.M.L. 1992) (common questions of fact justify MDL transfer).

Moreover, as set forth in the Bank of America Defendants' Response to the Maggi Motion in MDL No. 1585 (at 3-5, 6-8), the fact that some of the cases pending against the Bank of America Defendants purport to assert class claims (securities claims, and in one case, ERISA claims), and others purport to assert derivative claims does not make transfer and coordination of the listed cases any less appropriate. See, e.g., In re Unumprovident Corp. Sec., Deriv. & "ERISA" Litig., 280 F. Supp. 2d 1377, 1379 (J.P.M.L. 2003); In re AOL Time Warner, 235 F. Supp. 2d at 1381 (consolidating derivative actions and class actions brought variously under federal securities laws and ERISA); In re Enron Corp. Sec., Deriv. & "ERISA" Litig., 196 F. Supp. 2d 1375, 1376 (J.P.M.L. 2002) (same); In re Global Crossing., 223 F. Supp. 2d at 1385 (transfer and coordination of class action, derivative and ERISA cases "is necessary in order to eliminate duplicative discovery").

## CONCLUSION

For the foregoing reasons, the Bank of America Defendants support the Canary Parties' motion for transfer of all cases against all mutual fund families to the Southern District of New York.

WACHTELL, LIPTON, ROSEN & KATZ

By: Paul K. Rowe /MJEA
Bernard W. Nussbaum
Paul K. Rowe
Jeffrey M. Wintner
Martin J.E. Arms

51 West 52nd Street
New York, New York 10019-6150
Phone: (212) 403-1000
Fax: (212) 403-2000

*Attorneys for the Bank of America Defendants*

Dated: November 18, 2003
New York, New York

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

NOV 20 2003

FILED
CLERK'S OFFICE

**PROOF OF SERVICE**

I, Martin J.E. Arms, hereby certify that on this 18th day of November 2003, the foregoing Response of the Bank of America Defendants in Support of the Motion by the Canary Parties to Centralize All Mutual Fund Timing Cases in One District was served by mail upon all parties and counsel listed on the attached service list.

Martin J.E. Arms

RECEIVED
CLERK'S OFFICE
2003 NOV 19 A 11:41
JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

Docket: 1586 - In re Mutual Fund Investment Litigation
Status: Pending on / /
Transferee District: Judge: Printed on 11/12/2003

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| Ademi, Guri<br>Ademi & O'Reilly<br>3620 E. Layton Avenue<br>Cudahy, WI 53110 | => Blevins, James; Painter, Holly |
| Arms, Martin J.E.<br>Watchtell, Lipton, Rosen & Katz<br>51 West 52nd Street<br>New York, NY 10019-6150 | => BACAP Distributors, LLC*; Banc of America Advisors, LLC*; Banc of America Capital Management, LLC*; Lewis, Kenneth D.* |
| Bashian, James V.<br>Law Offices of James V. Bashian, P.C.<br>Fairfield Commons<br>271 Route 46 West<br>Suite F-207<br>Fairfield, NJ 07004 | => Leonard, Sarah; Lesser, Maurice; Mule, Andrew D. |
| Bernstein, Joel H.<br>Goodkind, Labaton, Rudoff & Sucharow, LLP<br>100 Park Avenue<br>12th Floor<br>New York, NY 10017 | => Garfield, Robert*; Weiner, Ronald D.* |
| Brady, P. John<br>Shughart, Thomson & Kilroy<br>12 Wyandotte Plaza<br>120 West 12th Street<br>Kansas City, MO 64105 | => Hill, Jr., John G.; Marini (Behalf of Leona A. Marini IRA dated 02/12/87), Leona A. |
| Brody, Jules<br>Stull, Stull & Brody<br>6 East 45th Street<br>New York, NY 10017 | => Archinaco, James M.; Zimmerman, Isidore |
| Brualdi, Richard B.<br>The Brualdi Law Firm<br>29 Broadway<br>Suite 1515<br>New York, NY 10006 | => Bloomfield, Amy; Corwin, Robert |
| Chimicles, Nicholas E.<br>Chimicles & Tikellis<br>One Haverford Centre<br>361 W. Lancaster Avenue<br>Haverford, PA 19041 | => Kidwell (Derivatively on behalf-the Janus Fund, the Janus Investment Fund & the Janus Funds), Tom*; Tsetsekos (Ind./Custodian for Yanani & Derivatively on behalf-the Janus Mercury Fund, the Janus Ente* |
| Clark, Bruce E.<br>Sullivan & Cromwell<br>125 Broad Street<br>28th Floor<br>New York, NY 10004-2498 | => Braaten, David*; D'Amato, Tony*; Strong Capital Management, Inc.*; Strong Financial Corp.*; Strong Investment, Inc.*; Strong Investor Services, Inc.*; Strong, Richard S.*; Zoeller, Thomas M.* |
| Cohen, Richard W.<br>Lowey, Dannenberg, Bemporad & Selinger, P.C.<br>The Gateway Building<br>11th Floor | => Kuperschmid, David* |

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| One North Lexington Avenue<br>White Plains, NY 10601 | |
| Colangelo, Stephen M.<br>Morrison & Foerster, LLP<br>1650 Tysons Boulevard<br>Suite 300<br>McLean, VA 22102 | => Nations Asset Allocation Fund*; Nations Bond Fund*; Nations CA Intermediate Municipal Bond Fund*; Nations CA Municipal Bond Fund*; Nations CA Tax-Exempt Reserves*; Nations Capital Growth Fund*; Nations Cash Reserves*; Nations Convertible Securities Fund*; Nations Emerging Markets Fund*; Nations FL Intermediate Municipal Bond Fund*; Nations FL Municipal Bond Fund*; Nations Fund Inc. Small Co. Fund*; Nations Fund Trust, Inc.*; Nations Fund, Inc.*; Nations Fund, Inc. International Value Fund*; Nations GA Intermediate Municipal Bond Fund*; Nations Global Value Fund*; Nations Government Reserves*; Nations Government Securities Fund*; Nations High Yield Bond Fund*; Nations Institutional Reserves Convertible Securities Fund*; Nations Intermediate Bond Fund*; Nations Intermediate Municipal Bond Fund*; Nations International Equity Fund*; Nations International Equity Primary Fund*; Nations International Value Fund*; Nations Kansas Municipal Income Fund*; Nations Largecap Enhanced Core Fund*; Nations Largecap Index Fund*; Nations Lifegoal Balanced Growth Portfolio*; Nations Lifegoal Growth Portfolio*; Nations Lifegoal Income and Growth Portfolio*; Nations Marisco Equities Fund*; Nations Marisco Focused Equities*; Nations Marisco Growth Fund*; Nations Marisco International Opportunities Fund*; Nations Marsico 21st Century Fund*; Nations Marsico Focused Equities Fund*; Nations Marsico Growth Fund*; Nations Marsico International Opportunities Fund*; Nations MD Intermediate Municipal Bond Fund*; Nations Midcap Growth Fund*; Nations Midcap Index Fund*; Nations Midcap Value Fund*; Nations Money Market Reserves*; Nations Municipal Income Fund*; Nations Municipal Reserves*; Nations NC Intermediate Municipal Bond Fund*; Nations SC Intermediate Municipal Bond Fund*; Nations Short-Intermediate Government Fund*; Nations Short-Term Income Fund*; Nations Short-Term Municipal Bond Fund*; Nations Short-Term Municipal Income Fund*; Nations Small Company Fund*; Nations Smallcap Index Fund*; Nations Smallcap Value Fund*; Nations Strategic Growth Fund*; Nations Strategic Income Fund*; Nations Tax-Exempt Reserves*; Nations TN Intermediate Municipal Bond Fund*; Nations Treasury Reserves (Collectively know as "Nations Funds")*; Nations TX Intermediate Municipal Bond Fund*; Nations VA Intermediate Municipal Bond Fund* |
| Craig, Gregory<br>Willams & Connolly<br>725 12th Street, N.W.<br>Washington, DC 20005 | => Bailey, Thomas H. |
| Devereaux, Peter<br>Latham & Watkins<br>633 West Fifth Street<br>Suite 4000<br>Los Angeles, CA 90071 | => Whiston, Mark B. |
| Dinielli, David C.<br>Munger, Tolles & Olson<br>355 South Grand Avenue<br>35th Floor<br>Los Angeles, CA 90071 | => AXA Financial, Inc.* |
| Dyer, III, Robert J.<br>Dyer & Shuman, LLP<br>801 East 17th Avenue<br>Denver, CO 80218 | => Kaufman, Richard E. |
| Fishman, Paul<br>Friedman Kaplan Seiler & Adelman, LLP<br>1633 Broadway<br>New York, NY 10019 | => Beeson, Mark A. |
| Gross, Deborah R.<br>Law Offices of Bernard M. Gross, P.C. | => Morris, Herbert |

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| 1515 Locust Street<br>2nd Floor<br>Philadelphia, PA 19102 | |
| Harris, Dale R.<br>Davis, Graham & Stubbs<br>1550 17th Street<br>Suite 500<br>Denver, CO 80202 | => Janus 2 Fund*; Janus Balanced Fund*; Janus Core Equity Fund*; Janus Enterprise Fund*; Janus Federal Tax-Exempt Fund*; Janus Flexible Income Fund*; Janus Fund*; Janus Global Life Sciences Fund*; Janus Global Technology Fund*; Janus Global Value Fund*; Janus Government Money Market Fund*; Janus Growth & Income Fund*; Janus High-Yield Fund*; Janus Investment Fund*; Janus Investment Fund Special Equity Fund*; Janus Mercury Fund*; Janus Mid Cap Value Fund*; Janus Money Market Fund*; Janus Olympus Fund*; Janus Orion Fund*; Janus Overseas Fund*; Janus Risk-Managed Stock Fund*; Janus Short-Term Bond Fund*; Janus Small Cap Value Fund*; Janus Special Equity Fund*; Janus Tax-Exempt Money Market Fund*; Janus Twenty Fund*; Janus Venture Fund*; Janus Worldwide Fund* |
| Holzer, Corey D.<br>Holzer, Holzer & Cannon, LLC<br>1117 Perimeter Center West<br>Suite E107<br>Atlanta, GA 30338 | => Goldstein, Tara |
| Isquith, Fred T.<br>Wolf Haldenstein Alder Freeman & Herz<br>270 Madison Avenue<br>New York, NY 10016 | => Bernstein (Custodian for Danielle Brooke/Derivatively on behalf-AllianceBernstein Technology Fund & |
| Jossen, Robert J.<br>Swidler, Berlin, Shereff & Friedman, LLP<br>The Chrysler Building<br>405 Lexington Avenue<br>New York, NY 10174 | => Canary Capital Partners, Inc.; Canary Capital Partners, LLC*; Canary Capital Partners, Ltd.*; Canary Investment Management, LLC*; Stern, Edward J.* |
| Kelly-Najah, Noreen<br>Latham & Watkins<br>885 Third Avenue<br>Suite 1000<br>New York, NY 10002 | => Schaffran, Charles |
| Khinda, Philip S.<br>Ropes & Gray, LLP<br>One Metro Center<br>700 12th Street, N.W<br>Suite 900<br>Washington, DC 20005-3948 | => Finn, John F.*; Marshall, Peter C.*; McCoy, Marilyn*; Oden, Jr., Robert A.*; One Group Arizona Municipal Bond Fund*; One Group Balanced Fund*; One Group Bond Fund*; One Group Diversified Equity Fund*; One Group Diversified International Fund*; One Group Diversified Mid Cap Fund*; One Group Equity Fund*; One Group Equity Income Fund*; One Group Equity Index Fund*; One Group Government Bond Fund*; One Group Health Sciences Fund*; One Group High Yield Bond Fund*; One Group Income Bond Fund*; One Group Intermediate Bond Fund*; One Group Intermediate Tax-Free Bond Fund*; One Group International Equity Index Fund*; One Group Investor Balanced Fund*; One Group Investor Conservative Growth Fund*; One Group Investor Gorwth & Income Fund*; One Group Investor Growth Fund*; One Group Kentucky Municipal Bond Fund*; One Group Large Cap*; One Group Large Cap Growth*; One Group Large Cap Value Fund*; One Group Lousiana Municipal Bond Fund*; One Group Market Expansion Index Fund*; One Group Market Neutral Fund*; One Group Michigan Municipal Bond Fund*; One Group Michigan Municipal Money Market Fund*; One Group Mid Cap Growth Fund*; One Group Mid Cap Value Fund*; One Group Mortgage-Backed Securities Fund*; One Group Municipal Income Fund*; One Group Municipal Money Market Fund*; One Group Mutual Funds (The)*; One Group Ohio Municipal Bond Fund*; One Group Prime Money Market Fund*; One Group Short-Term Bond Fund*; One Group Short-Term Municipal Bond Fund*; One Group Small Cap Growth Fund*; One Group Small Cap Value Fund*; One Group Tax-Free Bond Fund*; One Group Treasury & Agency Fund*; One Group U.S. Government Securities Money Market Fund*; One Group U.S. Treasury Securities Money Market Fund*; One Group Ultra Short-Term Bond Fund*; One Group West Virginia Municipal Bond Fund*; Ruebeck, Frederick W.*; Tuttle, Donald L.* |

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| Kirsch, Mark A.<br>Clifford Chance Us, LLP<br>200 Park Avenue<br>New York, NY 10166 | => Alliance Capital Management Holding, L.P.*; Alliance Capital Management L.P.*; AllianceBernstein All-Asia Investment Fund; AllianceBernstein Americas Government Income Trust; AllianceBernstein Balanced Shares; AllianceBernstein Bond Fund Corporate Bond Portfolio; AllianceBernstein Bond Fund Quality Bond Portfolio; AllianceBernstein Bond Fund U.S. Government Portfolio; AllianceBernstein Disciplined Value Fund; AllianceBernstein Emerging Market Debt Fund; AllianceBernstein Global Small Capital Fund; AllianceBernstein Global Strategic Income Trust; AllianceBernstein Global Value Fund; AllianceBernstein Greater China '97 Fund; AllianceBernstein Growth & Income Fund; AllianceBernstein Growth Fund; AllianceBernstein Health Care Fund; AllianceBernstein High-Yield Fund; AllianceBernstein Intermediate California Municipal Portfolio; AllianceBernstein Intermediate Diversified Municipal Portfolio; AllianceBernstein Intermediate New York Municial Portfolio; AllianceBernstein International Value Fund; AllianceBernstein Mid-CAO Growth Fund; AllianceBernstein Multi-Market Stratgey Fund; AllianceBernstein Municipal Income Florida Portfolio; AllianceBernstein Municipal Income Fund Arizona Portfolio; AllianceBernstein Municipal Income Fund California Portfolio; AllianceBernstein Municipal Income Fund Insured National Portfolio, Inc.; AllianceBernstein Municipal Income Fund Massachusetts Portfolio; AllianceBernstein Municipal Income Fund Michigan Portfolio; AllianceBernstein Municipal Income Fund Minnesota Portfolio; AllianceBernstein Municipal Income Fund National Portfolio; AllianceBernstein Municipal Income Fund New Jersey Portfolio; AllianceBernstein Municipal Income Fund New York Portfolio; AllianceBernstein Municipal Income Fund Ohio Portfolio; AllianceBernstein Municipal Income Fund Pennsylvania Portfolio; AllianceBernstein New Europe Fund; AllianceBernstein Premier Growth Fund; AllianceBernstein Quasar Fund; AllianceBernstein Real Estate Investment; AllianceBernstein Real Estate Investment Fund; AllianceBernstein Select Investor Series Premier Portfolio; AllianceBernstein Select Investors Series Biotechnology Portfolio; AllianceBernstein Select Investors Series Technology Portfolio; AllianceBernstein Short Duration; AllianceBernstein Small Capital Value Fund; AllianceBernstein Technology Fund; AllianceBernstein U.S. Large Capital Portfolio; AllianceBernstein Utility Income Fund; AllianceBernstein Value Fund; AllianceBernstein Worldwide Privatization Fund |
| Kirva, James J.<br>Kasdorf, Lewis & Swietlik, S.C.<br>One Park Plaza<br>11270 West Park Place<br>Milwaukee, WI 53224 | => Ferris, Jackson T.; Ferris, James M.; Ferris, Joseph G.; Gumm, Adam M.; Gumm, Alyssa G.; Gumm, Amanda C.; Gumm, Kathleen D.; Kriva, Christopher J.; Kriva, Molly C.; Kurth, Amanda C.; Kurth, Andrea D.; Kurth, Christopher C.; Schueller, Chris; Schueller, Connor; Wisconsin College Savings Program Board (The) |
| Kociubes, Joseph L.<br>Bingham McCutchen, LLP<br>150 Federal Street<br>Boston, MA 02110 | => Strong 529 Plan; Strong Advantage Fund-Ultra Short Term Bond Fund; Strong Advisor Bond Fund; Strong Advisor Common Stock Fund; Strong Advisor Mid Cap Growth Fund; Strong Advisor Short Duration Fund; Strong Advisor Small Cap Value Fund; Strong Advisor U.S. Value Fund; Strong All Cap Value Fund; Strong ASIA Pacific Fund; Strong Balanced Fund; Strong Balanced Fund, Inc. fka Strong Balanced Fund, Inc./WI.and Strong Asset Allocation Fund, Inc.; Strong Balanced Stock Funds, Inc. fka Strong Schaffer Fund, Inc.; Strong Blue Chip Fund; Strong Common Stock Fund, Inc.; Strong Corporate Bond Fund; Strong Corporate Income Fund; Strong Discovery Fund, Inc.; Strong Dividend Income Fund; Strong Dow 30 Value Fund; Strong Endeavor Fund; Strong Energy Fund; Strong Enterprise Fund; Strong Equity Funds II, Inc. fka Strong Multi Cap Value Fund, Inc. fka Strong Schaffer Funds, Inc.; Strong Equity Funds, Inc.; Strong Equity Funds, Inc. Technology 100 Fund; Strong Equity Funds, Inc. US Emerging Growth; Strong Florida Municipal Money Market Fund; Strong Government Securities Fund, Inc.; Strong Growth & Income Fund; Strong Growth 20 Fund; Strong Growth Fund, Inc.; Strong Heritage Money Fund; Strong Heritage Reserve Series, Inc.; Strong High-Yield Bond Fund; Strong High-Yield Municipal Bond Fund; Strong Income Fund, Inc.; Strong Income Funds II, Inc. fka Strong Institutional Funds, Inc.; Strong Income Funds, Inc. fka Strong Institutional Funds, Inc.; Strong Income Trust; Strong Index 500 Fund; Strong Intermediate Municipal Bond Fund; Strong International Equity Funds, Inc.; Strong International Income Funds, Inc.; Strong Large Cap Core Fund; Strong Large Cap Growth Fund, Inc.; Strong Large Company Growth Fund; Strong Life Stage Series, Inc.; Strong Life Stage Series-Agressive Portfolio; Strong Life Stage Series-Conservative Portfolio; Strong Life Stage Series-Moderate Portfolio; Strong Mid Cap Disciplined Fund; Strong Minnesota Tax-Free Fund; Strong Money Market Fund, Inc.; Strong Multi Cap; Strong Multi Cap Value Fund; Strong Municipal Bond Fund, Inc.; Strong Municipal Funds, Inc.; Strong Municipal Money Market Fund; Strong Opportunity Fund, Inc.; Strong Overseas Fund; Strong Short-Term Bond Funds; Strong Short-Term High Yield Bond |

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| | Fund; Strong Short-Term High Yield Municipal Fund; Strong Short-Term Income Fund; Strong Short-Term Municipal Bond Fund, Inc.; Strong Small Company Value Fund; Strong Strategic Value Fund; Strong Tax-Free Money Fund; Strong Technology 100 Fund; Strong U.S. Emerging Growth Fund; Strong Ultra Short-Term Income Fund; Strong Ultra Short-Term Municipal Income Fund; Strong Value Fund; Strong Wisconsin Tax-Free Fund |
| Kramer, Daniel J.<br>Paul, Weiss, Rifkind, Wharton & Garrison LLP<br>1285 Avenue Of The Americas<br>New York, NY 10019-6064 | => Bank One Corp.*; Bank One Investment Advisors*; Carter, Clyde L.*; Jandrain, III, Richard R.*; Johnson-Grunst, Karen* |
| Krasner, Daniel W.<br>Wolf, Haldenstein, Adler, Freeman & Herz, L.L.P.<br>270 Madison Avenue<br>11th Floor<br>New York, NY 10016 | => Bernstein, Vivian; Coleman (Derivatively/Behalf-Strong Growth Fund, Inc.), Gregory D.; Finnell (Derivatively on behalf-Nations Funds), Robert K. |
| Linkh, Gregory B.<br>Rabin, Murry & Frank, LLP<br>275 Madison Avenue<br>New York, NY 10016 | => Dunlap, Pamela*; Sussman, Kathleen A.* |
| Lovell, Christopher<br>Lovell , Stewart & Halebian<br>500 Fifth Avenue<br>Suite 5800<br>New York, NY 10110 | => Elan, Jocelin; Wormley, Brian |
| McKenna, Thomas J.<br>Gainey & Mckenna<br>485 Fifth Avenue<br>3rd Floor<br>New York, NY 10017 | => Forsee, Wathena Ann |
| Nelson, Robert J.<br>Lieff, Cabraser, Heimann & Bernstein, LLP<br>Embarcadero Center West<br>275 Battery Street<br>30th Floor<br>San Francisco, CA 94111-3339 | => Silverman, William* |
| Nussbaum, Bernard W.<br>Wachtell, Lipton, Rosen & Katz<br>51 West 52nd Street<br>New York, NY 10019-6150 | => Bank of America Corp.*; Bank of America, N.A.* |
| Ottensoser, U. Seth<br>Bernstein Liebhard & Lifshitz, Llp<br>10 East 40th Street<br>New York, NY 10016 | => Bernstein, Vivian*; Congregation Ohel Torah*; Pelak, William* |
| Perry, Mark A.<br>Gibson, Dunn & Crutcher, LLP<br>1050 Connecticut Avenue, N.W.<br>Washington, DC 20036 | => Janus Capital Corp.*; Janus Capital Group, Inc.*; Janus Capital Management, LLC*; Janus Distributors, LLC; Janus International; Janus Services, LLC |
| Peterson, Mark A.<br>McNally, Maloney & Peterson, S.C.<br>2600 North Mayfair Road | => LeFavour (Derivatively/Behalf-Strong Growth Fund, Inc. and all other Strong Mutual Funds), Steve |

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| Suite 1080<br>Milwaukee, WI 53226 | |
| Press, Ira M.<br>Kirby, McInerney & Squire, L.L.P.<br>830 Third Avenue<br>10th Floor<br>New York, NY 10022 | => Dukes, Jo Ann; Haig, Elsie |
| Rifkin, Mark C.<br>Wolf, Haldenstein, Adler, Freeman & Herz, L.L.P.<br>270 Madison Avenue<br>10th Floor<br>New York, NY 10016 | => Gaines (Derivatiely/Behalf-Janus Global Technology Fund), Sharon*; Gaines, Michael*; Steinberg, Gloria* |
| Romatowski, Peter<br>Jones Day<br>51 Louisiana Avenue, N.W.<br>Washington, DC 20001-2113 | => Miller, Girard C. |
| Rosner, Marian P.<br>Wolf Popper, L.L.P.<br>845 Third Avenue<br>New York, NY 10022-6689 | => Bookhout (Trustee-Bookhhout Family Trust), George W.*; Bookhout (Trustee-Bookhout Family Trust), Helen L.*; Pestone, Carol*; Tischler, Charles*; Torelli, Tom* |
| Rotunno, John W.<br>Bell, Boyd & Lloyd<br>Three First National Plaza<br>Suite 3000<br>70 West Madison Street<br>Chicago, IL 60602 | => McCalpin, William F.*; McCarter, Jr., John W.*; Mullen, Dennis B.*; Rothe, James L.*; Rothe, James T.*; Stewart, William D.; Waldinger, Martin F.*; Waldinger, Martin H.* |
| Savett, Sherrie R.<br>Berger & Montague, P.C.<br>1622 Locust Street<br>Philadelphia, PA 19103 | => Lang, John R.*; Lang, Rose*; McDaid, Edward B.*; McDaid, Elizabeth W.* |
| Schulman, Steven G.<br>Milberg, Weiss, Bershad, Hynes & Lerach, LLP<br>One Pennsylvania Plaza<br>49th Floor<br>New York, NY 10119-0165 | => Abdelnour, Albert*; Abrams, Ronald*; Armentano, John*; Brown, Anthony*; Cohen, Samuel T.*; Countegan (Custodian for Daniel & Rachel Countegan), Martin D.*; Cucheran, John*; Dworkin, Allan*; Etsen, May*; Feder, Michael*; Gallotta, Louis*; Halvorson, Jenell Marie*; Hindo, Nada*; Huang, Andy Yijun*; Kranz, Denise Mortner*; Luo, Aiyuan*; Maged, Norman*; Nolte, Thomas R.*; Reinhardt, Lori*; Segal, Howard*; Spitzer (Custodian for Levi Spitzer-Utman NY), Morris*; Stone, Selma*; Waring, Robert* |
| Simon, Bruce L.<br>Cotchett, Pitre, Simon & McCarthy<br>San Francisco Airport Office Center<br>Suite 200<br>840 Malcolm Road<br>Burlingame, CA 94010 | => Jones, Thomas R.* |
| Squitieri, Olimpio Lee<br>Squitieri & Fearon, LLP<br>420 Fifth Avenue<br>18th Floor<br>New York, NY 10018 | => Bailey, Roger L.*; Schultz, James*; Vladimir, Rhonda* |
| Stephens, Inc.,<br>111 Center Street | => Stephens, Inc. |

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| Little Rock, AR 72201 | |
| Topaz, Marc A.<br>Schiffrin & Barroway, LLP<br>Three Bala Plaza East<br>Suite 400<br>Bala Cynwyd, PA 19004 | => Brett, David; Golisano, John; Robinson, Glen; Sylvester, Arthur; Vadehera, Priya |
| Weiss, Joseph H.<br>Weiss & Yourman<br>551 Fifth Avenue<br>Suite 1600<br>New York, NY 10176 | => Tepfer, Nechama |
| Weiss, Melvyn I.<br>Milberg, Weiss, Bershad, Hynes & Lerach, LLP<br>One Pennsylvania Plaza<br>49th Floor<br>New York, NY 10119-1065 | => Stokes, Linda Kay; Yarbrough, Jack |
| Yourman, Kevin J.<br>Weiss & Yourman<br>10940 Wilshire Boulevard, 24th Floor<br>Los Angeles, CA 90024 | => Lin, Leann |

Exhibit A

COPY

FILED
2003 NOV -4 PM 12:40
CLERK U.S. DISTRICT COURT CENTRAL DIST. OF CALIF. LOS ANGELES
BY ______

HENRY H. ROSSBACHER (060260)
JAMES S. CAHILL (070353)
TALIN KHACHATURIAN (217572)
**THE ROSSBACHER FIRM**
811 Wilshire Boulevard, Suite 1650
Los Angeles, Ca 90017-2666
Telephone: (213) 895-6500

Liaison Counsel

MELVYN I. WEISS
STEVEN G. SCHULMAN
PETER E. SEIDMAN
**MILBERG WEISS BERSHAD HYNES & LERACH LLP**
One Pennsylvania Plaza
New York, NY 10119
Telephone: (212) 594-5300

Proposed Lead and Coordinating Counsel

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| LEANN LIN, Individually and on Behalf of Herself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>BANK OF AMERICA CORPORATION; BANK OF AMERICA NA; BANC OF AMERICA CAPITAL MANAGEMENT LLC; NATIONS FUND TRUST; and ROBERT H. GORDON,<br><br>Defendants. | No. 2:03cv6330 ~~(TGH)~~ TJH (VBKx)<br><br>Related Actions:<br>2:03cv7249 (RGK)<br>2:03cv7654 (VBK)<br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF THE NATIONS LEAD PLAINTIFF MOVANTS FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, APPOINTMENT OF STEERING COMMITTEE, AND APPROVAL OF SELECTION OF LEAD COUNSEL, COORDINATING COUNSEL AND LIAISON COUNSEL** |

[Caption Continued on Following Page]

Date: December 1, 2003
Time: 10:00 a.m.
Courtroom: 17
The Honorable Terry J. Hatter, Jr.

KATHLEEN A. SUSSMAN and HOWARD SEGAL, On Behalf of Themselves and All Others Similarly Situated, ) No. 2:03cv6957 (GAF)

Plaintiffs,

vs.

NATIONS CAPITAL GROWTH FUND; NATIONS MARSICO 21ST CENTURY FUND; NATIONS MARSICO FOCUSED EQUITIES FUND; NATIONS MARSICO GROWTH FUND; NATIONS MIDCAP GROWTH FUND; NATIONS STRATEGIC GROWTH FUND; NATIONS ASSET ALLOCATION FUND; NATIONS MIDCAP VALUE FUND; NATIONS SMALLCAP VALUE FUND; NATIONS VALUE FUND; NATIONS GLOBAL VALUE FUND; NATIONS INTERNATIONAL EQUITY FUND; NATIONS INTERNATIONAL VALUE FUND; NATIONS MARSICO INTERNATIONAL OPPORTUNITIES FUND; NATIONS GOVERNMENT SECURITIES FUND; NATIONS HIGH YIELD BOND FUND; NATIONS INTERMEDIATE BOND FUND; NATIONS SHORT-INTERMEDIATE GOVERNMENT FUND; NATIONS SHORT-TERM INCOME FUND; NATIONS STRATEGIC INCOME FUND; NATIONS CA INTERMEDIATE MUNICIPAL BOND FUND; NATIONS CA MUNICIPAL BOND FUND; NATIONS FL INTERMEDIATE MUNICIPAL BOND FUND; NATIONS FL MUNICIPAL BOND FUND; NATIONS GA INTERMEDIATE MUNICIPAL BOND FUND; NATIONS INTERMEDIATE MUNICIPAL BOND FUND; NATIONS KANSAS MUNICIPAL INCOME FUND; NATIONS MD INTERMEDIATE)

MUNICIPAL BOND FUND; NATIONS MUNICIPAL INCOME FUND; NATIONS NC INTERMEDIATE MUNICIPAL BOND FUND; NATIONS SC INTERMEDIATE MUNICIPAL BOND FUND; NATIONS SHORT-TERM MUNICIPAL INCOME FUND; NATIONS TN INTERMEDIATE MUNICIPAL BOND FUND; NATIONS TX INTERMEDIATE MUNICIPAL BOND FUND; NATIONS VA INTERMEDIATE MUNICIPAL BOND FUND; NATIONS LARGECAP ENHANCED CORE FUND; NATIONS LARGECAP INDEX FUND; NATIONS MIDCAP INDEX FUND; NATIONS SMALLCAP INDEX FUND; NATIONS LIFEGOAL BALANCED GROWTH PORTFOLIO; NATIONS LIFEGOAL GROWTH PORTFOLIO; NATIONS LIFEGOAL INCOME AND GROWTH PORTFOLIO; NATIONS CONVERTIBLE SECURITIES FUND; NATIONS CA TAX-EXEMPT RESERVES; NATIONS CASH RESERVES; NATIONS GOVERNMENT RESERVES; NATIONS MONEY MARKET RESERVES; NATIONS MUNICIPAL RESERVES; NATIONS TAX-EXEMPT RESERVES; NATIONS TREASURY RESERVES (AKA NATIONS FUNDS); BANK OF AMERICA CORPORATION; BANC OF AMERICA CAPITAL MANAGEMENT LLC; BANC OF AMERICA ADVISORS LLC; NATIONS FUND INC.; ROBERT H. GORDON; THEODORE H. SIHPOL, III; CHARLES D. BRYCELAND; EWARD J. STERN; CANARY CAPITAL PARTNERS LLC; CANARY INVESTMENT MANAGEMENT LLC; CANARY CAPITAL PARTNERS INC.,

Defendants.

# TABLE OF CONTENTS


| | Page |
|---|---|
| INTRODUCTION | 1 |
| FACTUAL BACKGROUND | 3 |
| ARGUMENT<br>POINT I<br>THE ACTIONS SHOULD BE CONSOLIDATED | 7 |
| POINT II<br>THE NATIONS LEAD PLAINTIFF MOVANTS SHOULD BE APPOINTED LEAD PLAINTIFF | 9 |
| A. The Procedure Required By the PSLRA | 10 |
| B. Movants Satisfy The "Lead Plaintiff" Requirements Of The PSLRA | 11 |
| 1. Movants Have Complied With The PSLRA and Should Be Appointed Lead Plaintiff | 11 |
| 2. Movants Have The Requisite Financial Interest In The Relief Sought By The Class | 12 |
| 3. Movants Otherwise Satisfy Rule 23 | 14 |
| POINT III<br>MILBERG WEISS SHOULD BE APPOINTED AS LEAD COUNSEL OF THE PSLRA CLAIMS AND COORDINATING COUNSEL OF THE CALIFORNIA CLAIMS AND THE ROSSBACHER FIRM SHOULD BE APPOINTED LIAISON COUNSEL | 17 |
| CONCLUSION | 19 |

## TABLE OF AUTHORITIES

Page

### FEDERAL CASES

*Andrews v. Bechtel Power Corp.*,
780 F.2d 124 (1st Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . 16

*Baystate Health Sys. v. Thompson*,
254 F. Supp. 2d 80 (D. D.C. 2003) . . . . . . . . . . . . . . . . . . . . . . 19

*De La Fuente v. Stokley-VanCamp, Inc.*,
713 F.2d 225 (7th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . 15

*Erikson v. Cornerstone Propane Ptnrs. LP*,
2003 U.S. Dist. LEXIS 18009 (N.D. Cal. Sept. 9, 2003) . . . . . . . . . . . . 7

*Fischler v. Amsouth Bancorporation*,
1997 U.S. Dist. LEXIS 2875 (M.D. Fla. Feb. 6, 1997) . . . . . . . . . . . . 15

*In re Great Southern Life Insurance Company Sales Practices Litigation*,
192 F.R.D. 212 (N.D. Tex. 2000) . . . . . . . . . . . . . . . . . . . . . . . 16

*Greebel v. FTP Software, Inc.*,
939 F. Supp. 57 (D. Mass. 1996) . . . . . . . . . . . . . . . . . . . . . . . 11

*Lax v. First Merchants*,
1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) . . . . . . . . . . . 12, 15

*Modell v. Eliot Sav. Bank*,
139 F.R.D. 17 (D. Mass. 1991) . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re Oxford Health Plans, Inc. Sec. Litig.*,
182 F.R.D. 42 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . 9

*Phillips v. Joint Legislative Comm. on Performance & Expenditure Review*,
637 F.2d 1014 (5th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . 16

*Priest v. Zayre Corp.*,
118 F.R.D. 552 (D. Mass. 1988) . . . . . . . . . . . . . . . . . . . . . . . 15

*Rossini v. Ogilvy & Mather, Inc.*,
798 F.2d 590 (2d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . 15

## TABLE OF AUTHORITIES (cont.)

Page

*Singer v. Nicor*, 2002 U.S. Dist. LEXIS 19884 (N.D. Ill Oct. 17, 2002) . . . . . . . . . . . . 14

*Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129 (C.D. Cal. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 886 F. Supp. 445 (E.D. Penn. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*In re Universal Access, Inc.*, 209 F.R.D. 379 (E.D. Tex. 2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

### DOCKETED CASES

*In re Bank of America Mutual Funds Securities Litigation*, MDL No. 1585 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Carol Pestone v. Janus Capital et al.*, No. 03-CV-6760 (S.D.N.Y. filed Sept. 5, 2003) . . . . . . . . . . . . . . . . . . 10

*Cohen v. Nations Capital Growth Fund et al.*, No. 03-CV-6847 (S.D.N.Y. filed Sept. 8, 2003) . . . . . . . . . . . . . . . . . . 10

*In re Enron Corp., Sec. Litig.*, No. H-01-3624 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*In re Initial Public Offering Sec. Litig.*, Master File, No. 21 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Lin v. Bank of America Corporation*, No. 03-C-6330 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Maggi v. Bank of America Corporation*, No. 03-CV-7249 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

The Nations Lead Plaintiff Movants, as defined below ("Movants"), hereby move this Court for entry of an order: consolidating the above-captioned actions (the "California Actions"); appointing the Nations Lead Plaintiff Movants as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA") with respect to all claims brought under the Securities Exchange Act of 1934 and the Securities Act of 1933 (collectively, the "California PSLRA Claims"); approving the Nations Lead Plaintiff Movants' designation of a steering committee comprised of class members John A. Norden, Jeffrey Robins and Roderick L. Rohrer to represent the Nations Lead Plaintiff Movants as Lead Plaintiff; approving the Nations Lead Plaintiff Movants' selection of Milberg Weiss Bershad Hynes & Lerach LLP ("Milberg Weiss"), pursuant to the PSLRA, as Lead Counsel of the PSLRA Claims, and as Coordinating Counsel with respect to the PSLRA Claims, and all other claims asserted in the above-captioned actions (the "California Non-PSLRA Claims") (collectively, with the PSLRA Claims, the "California Claims"); and approving the Nations Lead Plaintiff Movants' selection of The Rossbacher Firm as Liaison Counsel.

## INTRODUCTION

**The Nations Funds Actions**: As of October 31, 2003 there were four related actions pending in this District, each brought on behalf of a class of purchasers of units of one or more of the Nations Funds (as defined in the caption of this filing) during various class periods, beginning as early as October 1, 1998 and ending as late as September 1, 2003 (the "California Actions"). The California Actions allege a variety of claims which the Lead Plaintiff Movants have divided into two categories herein for the purpose of presentation to the Court for determination of this motion. One category

of claims, the California PSLRA Claims, allege violations of §§ 11 and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77(k) and (o); §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. §240.10b-5. The other category of claims, the California Non-PSLRA Claims, allege violations of § 201, *et seq.* of the Investment Advisers Act of 1940, 15 U.S.C. §80b-1, *et seq.*; and § 1, *et seq.*, of the Investment Company Act of 1940, 15 U.S.C. §80a-1 *et seq.*; and state law claims, including breaches of fiduciary duties.[1]

**<u>The Multi-District Transfer Proceedings</u>**: The Nations Actions are the subject of a motion filed on October 21, 2003 by plaintiff Jean Marie Maggi, individually, as a representative of Angelina Maggi[2] (the "*Maggi* Motion") that is pending before the Judicial Panel on Multidistrict Litigation (the "MDL Panel"). The motion seeks centralization of the Nations Actions in this District for consolidated or coordinated treatment.[3] The Nations Lead Plaintiff Movants concur with the Maggi Motion to the

---

[1]Actions against the same or similar defendants and containing the same allegations are pending in the Eastern District of California, the Southern District of New York, and the District of New Jersey, where certain actions also assert violations of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq., and/or derivative claims. These actions, collectively with the California Actions, are referred to herein as the "Nations Actions." See Exhibit A (a complete list of the Nations Actions, including the California Actions) and Exhibit B (schedule of Nations Actions by claims) of the Declaration of Henry Rossbacher In Support of the Nations Lead Plaintiff Movants' Motion for Appointment as Lead Plaintiff, Appointment of Steering Committee, And Approval of Selection of Lead Counsel, Coordinating Counsel, and Liaison Counsel, submitted contemporaneously herewith (the "Rossbacher Decl.").

[2]*Maggi v. Bank of America Corporation*, No. 03-CV-7249 (C.D. Cal. filed on Oct. 9, 2003) (RGK) (the "*Maggi* Action").

[3]The *Maggi* Motion has been assigned to the MDL docket and captioned *In re Bank of America Mutual Funds Securities Litigation,* MDL No. 1585.

extent that this District is the most appropriate forum for the Nations Actions because this is where Bank of America and its affiliates conduct business and maintain numerous offices, where the most witnesses and relevant documents are most likely located, and where a significant number of Nations Actions were filed.[4]

## FACTUAL BACKGROUND[5]

Mutual funds are meant to be long-term investments and are therefore the favored savings vehicles for many Americans' retirement and college funds. Unbeknownst to investors, from at least as early as October 1, 1998 and until as late as September 1, 2003, defendants engaged in fraudulent and wrongful schemes that enabled certain favored investors to reap many millions of dollars in profit, at the expense of Nations Funds' investors through secret and illegal after-hours trading and timed trading. In exchange for allowing and facilitating this improper conduct, the "Fund Defendants" received substantial fees and other remuneration for themselves and their affiliates to the detriment of Movants who knew nothing of these illicit

---

[4]On or about October 15, 2003, the "Canary Defendants" (*i.e.*, Canary Partners, LLC a New Jersey Limited Liability Company with offices in Secaucus, New Jersey; Canary Investment Management LLC, a New Jersey Limited Liability Company with offices in Secaucus, New Jersey; and Canary Capital Partners, Ltd., a Bermuda limited liability company) filed their own motion with the MDL Panel seeking centralization of ***all*** actions alleging illegal late trading and/or timing in the Strong, Janus, Nations ***and*** One Group mutual fund families in the Southern District of New York for coordinated or consolidated treatment. The Nations Lead Plaintiff Movants oppose the Canary Defendants' motion on the ground that the actions name different defendants, involve distinct factual allegations and, for these reasons, consolidation of the actions would be unworkable.

[5]These facts are drawn from the allegations in the complaint captioned *Sussman et al. v. Nations Capital Growth Fund et al.* No. 03CV6957 (GAF) (C.D. Cal.) (the "*Sussman* Action").

arrangements.[6] The complaints allege that BACAP, and its predecessor, BA Advisors, as managers of the Nations Funds, and each of the relevant fund managers, profited from fees BACAP and BA Advisors charged to the Nations Funds that were measured as a percentage of the funds under management. In exchange for the right to engage in wrongful late trading and timing, the Canary Defendants agreed to park substantial assets in Nations Funds. Furthermore, the Canary Defendants secretly disguised additional, improper compensation to the Fund Defendants as interest payments on monies loaned by the Fund Defendants to the Canary Defendants for the purpose of financing the illegal scheme.

"Late trading" exploits the unique way in which mutual funds, including the Nations Funds, set their prices. The daily price of mutual fund shares is generally calculated once a day as of 4:00 p.m. EST. This price, known as the "Net Asset Value" or "NAV," generally reflects the closing prices of the securities that comprise a given fund's portfolio, plus the value of any cash that the fund manager maintains for the fund. Orders to buy, sell or exchange mutual fund shares recorded before 4:00 p.m. EST on a given day receive that day's price. Orders placed after 4:00 p.m. EST are supposed to be filled using the following day's price. The Canary Defendants secretly agreed with the Fund Defendants that orders they placed after 4:00 p.m. on a given day would illegally receive that day's price (as opposed to the next day's price, which the order would have received had it been processed lawfully). This illegal

[6] The "Fund Defendants" are Bank of America Corp.; Banc of America Advisors, LLC ("BA Advisors"); Banc of America Capital Management ("BACAP") Nations Fund, Inc. and the Nations Funds.

conduct allowed the Canary Defendants to capitalize on market-moving financial and other information that was made public after the close of trading at 4:00 p.m. while ordinary investors, who bought their Nations Funds' shares lawfully, could not.

"Timing" is an arbitrage strategy involving short-term trading that can be used to profit from mutual funds' use of "stale" prices to calculate the value of securities held in the funds' portfolio. These prices are "stale" because they do not necessarily reflect the "fair value" of such securities as of the time the NAV is calculated. A typical example is a U.S. mutual fund that holds Japanese securities. Because of the time zone difference, the Japanese market may close at 2 a.m. New York time. If the U.S. mutual fund manager uses the closing prices of the Japanese securities in his or her fund to arrive at an NAV at 4 p.m. in New York, he or she is relying on market information that is fourteen hours old. If there have been positive market moves during the New York trading day that will cause the Japanese market to rise when it later opens, the stale Japanese prices will not reflect that increase, and the fund's NAV will be artificially low. Put another way, the NAV would not reflect the true current market value of the stocks the fund holds.

Like late trading, effective timing captures an arbitrage profit that comes dollar-for-dollar out of the fund; the timer steps in at the last moment and takes part of the buy-and-hold investors' upside when the market goes up, so the next day's NAV is reduced for those who are still in the fund. If the timer sells short on bad days, the arbitrage has the effect of making the next day's NAV lower than it would otherwise have been, thus magnifying the depressed returns that investors are experiencing in a declining market.

On September 3, 2003, New York Attorney General Eliot Spitzer, following a confidential full-scale investigation, filed a complaint charging fraud in connection with the Canary Defendants' late trading and timed trading (the "Spitzer Complaint") and announced that the Canary Defendants had settled the charges against it, agreeing to pay a $10 million fine and $30 million in restitution. On September 4, 2003, *The Wall Street Journal* published a front page story about the Spitzer Complaint in which the New York Attorney General compared late trading to "being allowed to bet on a horse race after the race was over," and which indicated that the fraudulent practices enumerated in the Spitzer Complaint were just the tip of the iceberg. In this regard, as quoted in the *Sussman* Action complaint, the article stated:

> [. . .] "The late trader," he said, "is being allowed into the fund after it has closed for the day to participate in a profit that would otherwise have gone completely to the fund's buy-and-hold investors."

On September 5, 2003, *The Wall Street Journal* reported that the New York Attorney General's Office had subpoenaed "a large number of hedge funds" and mutual funds as part of its investigation, "underscoring concern among investors that the improper trading of mutual-fund shares could be widespread" and that the SEC, joining the investigation, planned to send letters to mutual funds holding about 75% of assets under management in the U.S. to inquire about their practices with respect to market-timing and fund-trading practices.

## ARGUMENT

## POINT I

## THE ACTIONS SHOULD BE CONSOLIDATED

Consolidation is appropriate when there is "a common question of law or fact pending before the Court." Fed. R. Civ. P. 42(a). *See Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1133 (C.D. Cal. 1999) (Morrow, J.); *see also Erikson v. Cornerstone Propane Ptnrs. LP*, 2003 U.S. Dist. LEXIS 18009, at *7-8 (N.D. Cal. Sept. 9, 2003).

The standard under Rule 42(a) is clearly met here. Each complaint alleges that defendants engaged in wrongful and deceitful "late trading" and "market timing" activity involving Nations Funds that enabled favored investors,to reap millions of dollars in profits. The complaints also each allege that, in exchange for allowing and facilitating this misconduct, the Fund Defendants received substantial fees, from so-called "sticky assets", which the Canary Defendants agreed to park in the Nations Funds, and that the ill-gotten gains came dollar for dollar out of the pockets of ordinary long-term investors, and imposed significant unnecessary transaction costs. The similarities between the California Actions is evidenced in the following excerpt of the *Maggi* Action, alleging Investment Company Act violations, which also appears, in large part, in other Nations Funds-related complaints filed in this District:

> [S]tarting in or about 2001, Bank of America reportedly installed special computer equipment in Canary's office that allowed it to buy and sell Bank of America's own mutual funds -- the Nations Funds -- and hundreds of other mutual funds at the 4:00 p.m. price until at least 6:30

EST. In return, Canary agreed to leave millions of dollars in Bank of America bond funds on a long-term basis. These parked funds are known in the trades as "sticky assets." Bank of America also reportedly provided Canary with approximately $300 million of credit to finance this late trading and timing, and sold Canary the derivative short positions it needed to time the funds as the market dropped. . . The relationship was mutually beneficial: Canary made tens of millions through late trading, while the various subsidiaries of Bank of America that serviced Canary's accounts made millions themselves. All of this activity was coordinated through the Bank of America broker who brought Canary in as a client, defendant Theodore C. Sihpol, III. None of these facts were disclosed in the Nations Funds prospectuses.

*Maggi* Action (Complaint, at ¶47).[7]

Given that the California Actions contain the same or similar defendants, overlapping allegations and common questions of fact, the standards for consolidating the California Actions pursuant to Fed R. Civ. 42(a) are clearly met, regardless of the legal theories advanced by plaintiffs. Plainly, consolidation for pretrial purposes under these circumstances will save judicial and private resources, and will promote efficiency and consistency in the prosecution of these Actions.

---

[7]*Compare, e.g., Sussman* Action Complaint at ¶¶ 37-40 (alleging federal securities laws violations and nearly identical facts as *Maggi* Action Complaint), and *Lin v. Bank of America Corporation*, No. 03-C-6330 (TJH) (Sept. 5, 2003) (Complaint at ¶¶ 46-57) (same).

## POINT II

## THE NATIONS LEAD PLAINTIFF MOVANTS SHOULD BE APPOINTED LEAD PLAINTIFF

The Nations Lead Plaintiff Movants should be appointed lead plaintiff because they have the largest financial interest in this litigation and otherwise meet the relevant requirements of Fed. R. Civ. P. 23. Moreover, Movants have proposed a leadership structure that makes the most sense for this litigation and which is fully consistent with the requirements and underlying purpose of the PSLRA. Courts have held that, ideally, a lead plaintiff group should be cohesive enough to ensure adequate cooperation among its members in the management of the action, yet should also reflect the diversity of the class they seek to represent. *See generally In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42 (S.D.N.Y. 1998) (holding that the combination of an institutional investor and an individual would be most representative of the class, composed of individual and institutional investors); *In re Universal Access, Inc.*, 209 F.R.D. 379, 384 (E.D. Tex. 2002) ("the appointment of a group of persons to act as lead plaintiff is appropriate under the PSLRA and, indeed, is sometimes favored in light of the ***diversity of experience and interests of the group members.***") (Emphasis added.) Movants meet the criteria of cohesiveness and diversity. Movants are comprised of class members who purchased shares in 22 different funds within the Nations family of funds, and thus are more representative of the class than any other movant(s).[8] Moreover, the Nations Lead Plaintiff Steering

---

[8]As is discussed more fully below, these actions are different from the typical PSLRA action in several ways, including that the class is comprised of investors in 22 funds in the Nations family of mutual funds. For this reason, an effort has been made to put

Committee is comprised of three members of the Nations Lead Plaintiff Movants and is unquestionably a small, cohesive unit that can easily and ably coordinate their efforts.[9]

### A. The Procedure Required By the PSLRA

The PSLRA establishes a procedure that governs the appointment of a Lead Plaintiff in "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §§ 78u-4(a)(1) and (a)(3)(B)(i). First, the plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). Plaintiff in the action captioned *Carol Pestone v. Janus Capital et al.*, No. 03-CV-6760 (S.D.N.Y. filed Sept. 5, 2003) caused notice to be published on *Primezone* on September 5, 2003. *See* Exhibit D.[10] Within 60 days of publishing the notice, any person or group of persons who are members of the proposed class may apply to the Court to be appointed as Lead Plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. § 78u-4(a)(3)(A) and (B). Second, the PSLRA provides that within 90 days after publication of the notice the Court shall consider any motion made by a class member and shall appoint as Lead

---

forth as lead plaintiff investors from as many of the funds as possible. Consequently, the number of lead plaintiff movants is correspondingly greater than the ordinary PSLRA action, which is typically brought against a single company.

[9]A complete list of the Nations Lead Plaintiff Movants is set forth in Exhibit C.

[10]*See also* Exhibit E (copy of notice published by counsel for plaintiff in the action *Cohen v. Nations Capital Growth Fund et al.*, No. 03-CV-6847(S.D.N.Y. filed Sept. 8, 2003)).

Plaintiff the member or members of the class that the Court determines to be most capable of adequately representing the interests of class members. 15 U.S.C. § 78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is the person or group of persons that:
>
> (aa) has either filed the complaint or made a motion in response to a notice...
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. 78u-4(a)(3)(B)(iii). *See generally Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 64 (D. Mass. 1996).

**B. <u>Movants Satisfy The "Lead Plaintiff" Requirements Of The PSLRA</u>**

**1. Movants Have Complied With The PSLRA And Should Be Appointed Lead Plaintiff**

The time period in which class members may move to be appointed Lead Plaintiff in this case, under 15 U.S.C. § 78u-4(a)(3)(A) and (B), expires on November 4, 2003. Movants' application is thus timely. Movants have each reviewed the complaint and are willing to serve as a representative party on behalf of the Class. *See* Exhibit F.[11] In addition, Movants have selected and retained competent counsel to

---

[11] Exhibit F contains the certification of each of the Nations Lead Plaintiff Movants, filed pursuant to the PSLRA, setting forth their relevant class period transactions in Nations funds.

represent them and the Class. *See* Exhibit G and H. Accordingly, Movants have satisfied the individual requirements of 15 U.S.C. § 78u-4(a)(3)(B) and are entitled to have their application for appointment as Lead Plaintiff, and their selection of Milberg Weiss as Lead Counsel and The Rossbacher Firm as Liaison Counsel, approved by the Court.

### 2. Movants Have The Requisite Financial Interest In The Relief Sought By The Class

In securities cases brought pursuant to the PSLRA, the relative financial interest of lead plaintiff movants is typically measured by the difference between the class-period purchase price of the securities on the one hand, and sale price of the securities subsequent to disclosure of defendants' materially false and misleading statements on the other.[12] These cases are different because the gravamen of plaintiffs' allegations is that defendants failed to disclose that they improperly siphoned money out of the Nations Funds through late trading, timed trading, and excessive fees, thereby decreasing the actual NAV of the funds. In these cases, investors were harmed, not only because they purchased the Nations Fund units at artificially inflated prices, without knowledge of this pattern and practice, but also because, once having invested their money in Nations Funds, unbeknownst to them, their money was

---

[12] *See Lax v. First Merchants*, 1997 U.S. Dist. LEXIS 11866 at *17 (N.D. Ill. Aug. 6, 1997)(The PSLRA does not state how the court should determine who has the largest financial interest, but four factors are surely relevant: (1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs).

improperly removed throughout the course of the class period as defendants profited from their late trading and timed trading.

Consequently, the typical PSLRA financial interest analysis may not be workable or appropriate in these cases. Recognizing this, Movants retained KeyPoint Consulting LLC ("Keypoint") to devise and implement a methodology for determining relative financial interest in this litigation. KeyPoint is a nationally renowned economic and financial consulting firm with offices in Los Angeles, Houston, and Emeryville, California. The firm provides research and consulting services primarily in the areas of antitrust, banking and finance, commercial damages, forensic accounting, intellectual property and regulation. Movants submit herewith as Exhibit I the Declaration of Marc Vellrath, Ph. D., CFA dated November 4, 2003 ("Vellrath Decl."). Vellrath is an economist and KeyPoint Principal. *See* Vellrath Decl. at ¶1.

According to Vellrath, one can quantify an investor's "exposure" by calculating the shareholder's "dollar days of holdings," or, equivalently, the shareholder's "average dollar holdings" for a typical day during the class period. A "dollar day of holdings" in a mutual fund is simply one dollar invested in the fund for one day. For example, if an investor held $1,000 in fund ABC for 500 days during the class period, that investor had 500,000 dollar-days of holdings in ABC fund during the class period. Therefore, an investor's "average dollar holdings" is the dollar value of his or her holdings on average each day during the class period calculated by dividing his or her total "dollar days of holdings" by the number of days in the class period.[13] As set

[13] Continuing with the previous example, if the class period were 1,000 days, the investor who had 500,000 dollar-days of holdings in ABC fund during the same period

forth in the Vellrath Declaration, this measure of financial interest is appropriate here because the longer an investor owns shares of a fund that permits improper trading, the more likely that he or she would suffer losses because of this misconduct. In particular, for a group of investors who purchased mutual fund shares during the class period, the harm suffered by those investors would most likely be, at a minimum, proportionate to both their dollar days of holdings and their average dollar holdings. *See id.* at ¶¶ 8-15.

Movants' average dollar holdings is $440,051 and the Nations Lead Plaintiff's Steering Committee's average dollar holding is $190,890. See Vellrath Dec. at ¶16. To our knowledge, this represents the largest financial interest of any competing lead plaintiff movant.

**3. Movants Otherwise Satisfy Rule 23**

According to 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." *See e.g. Singer v. Nicor*, 2002 U.S. Dist. LEXIS 19884 (N.D. Il Oct. 17, 2002). Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or

---

had average dollar holdings of $500 each.

defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites to class certification, only two, typicality and adequacy, directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as Lead Plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the Lead Plaintiff moves for class certification. *Lax*, 1997 U.S. Dist. LEXIS 11866, at *20; *Fischler v. Amsouth Bancorporation*, No. 96-1567-Civ -T-17A, 1997 U.S. Dist. LEXIS 2875, at *7-8 (M.D. Fla. Feb. 6, 1997). The Nations Lead Plaintiff Movants should be appointed Lead Plaintiff because they satisfy the typicality and adequacy requirements of Rule 23.

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. Typicality exists where the plaintiffs' claims arise from the same series of events and are based on the same legal theories as the claims of all the class members. *See De La Fuente v. Stokley-VanCamp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) and *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986). Typicality does not require that there be no factual differences between the class representatives and the class members because it is the generalized nature of the claims asserted which determines whether the class representatives are typical. *See Priest v. Zayre Corp.*, 118 F.R.D. 552, 555 (D. Mass. 1988) ("With respect to typicality under Rule 23(a)(3), plaintiffs need not show substantial identity between their claims and those of absent class members, but need only show that their claims arise from the same course of conduct that gave rise to the claims of the absent [class]

members.") (citations omitted). The requirement that the proposed class representatives' claims be typical of the claims of the class does not mean, however, that the claims must be identical. *See In re Great Southern Life Insurance Company Sales Practices Litigation*, 192 F.R.D. 212, 217 (N.D. Tex. 2000) (citing *Phillips v. Joint Legislative Comm. on Performance & Expenditure Review*, 637 F.2d 1014, 1024 (5th Cir. 1981)). Movants satisfy this requirement because, just like all other class members, they: (1) purchased Nations Fund units during the Class Period; (2) purchased Nations Fund units in reliance upon the allegedly materially false and misleading statements issued by defendants and the integrity of the market for the units; and (3) suffered damages as a result of late trading and market timing. Thus, Movants' claims are typical of those of other Class members since their claims and the claims of other Class members arise out of the same course of events.

Under Rule 23(a)(4), the representative parties must also "fairly and adequately protect the interests of the class." The PSLRA directs the Court to limit its inquiry regarding the adequacy of movants to represent the Class to the existence of any conflicts between the interest of those movants and the members of the Class. The standard for adequacy of representation under Rule 23(a)(4) is met by: (1) the absence of potential conflicts between the named plaintiffs and the class members and (2) the class representatives' choice of counsel who is qualified, experienced and able to vigorously conduct the proposed litigation. *See Modell v. Eliot Sav. Bank*, 139 F.R.D. 17, 23 (D. Mass. 1991) (citing *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (lst Cir. 1985)).

Here, Movants are an adequate representative of the Class. Their interests are aligned with the interests of the Class because they all purchased Nations units pursuant to materially false and misleading statements. Furthermore, there is no evidence of antagonism between Movant and the Class. In addition, as shown below, Movants' proposed Lead Counsel is highly qualified, experienced and able to conduct this complex litigation in a professional manner. Thus, Movants *prima facie* satisfies the commonality, typicality and adequacy requirements of Rule 23 for the purposes of this motion.

**POINT III**

**MILBERG WEISS SHOULD BE APPOINTED AS LEAD COUNSEL OF THE PSLRA CLAIMS AND COORDINATING COUNSEL OF THE CALIFORNIA CLAIMS AND THE ROSSBACHER FIRM SHOULD BE APPOINTED LIAISON COUNSEL**

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), Movant shall, subject to Court approval, select and retain counsel to represent the class he seeks to represent. In that regard, Movant has selected Milberg Weiss to serve as Lead Counsel and The Rossbacher Firm to serve as Liaison Counsel. These firms have substantial experience in the prosecution of shareholder and securities class actions, and have the resources necessary to efficiently conduct this litigation. See Exhibits H and I. Accordingly, the Court should approve Movants' selection of Lead Counsel.

Milberg Weiss should also be appointed coordinating counsel of the California Actions. Given the multiplicity of claims presented by the California Actions and the possibility that numerous other Nations-related actions will be centralized in this District, the appointment of Coordinating Counsel is necessary to avoid chaos and to

ensure efficient management of the litigation. *The Manual for Complex Litigation* cautions that without coordination, complex litigations raising similar issues and involving numerous parties and separate counsel can result in a "waste of time and money, in confusion and indirection, and in unnecessary burden on the court." *Manual for Complex Litigation*, 3d Ed. at 36 (2003). In order to avoid these unwanted results, the Manual advises that "special procedures for coordination of counsel are therefore needed and should be instituted early in the litigation to avoid unnecessary costs and duplicative activity." *Id.*

The California Actions are precisely the type of complex multiparty litigation that will benefit from the appointment of Coordinating Counsel. As detailed in Point I above, there are four Nations-related actions in this District, and ten in other districts. The various actions assert a plethora of claims. Yet the various actions allege essentially the same facts, namely, that defendants engaged in a scheme whereby certain privileged investors improperly traded mutual fund shares to the detriment of ordinary investors. The potential for unnecessary duplication and inefficiency is therefore present under these circumstances and, accordingly, the appointment of Coordinating Counsel is appropriate. See Manual for Complex Litigation, 3d Ed. at 36-37 (2003).

Once appointed, in order to the enable the efficient prosecution of the California Actions, Coordinating Counsel should have the responsibility and authority to, among other things, "coordinate with all other plaintiffs' counsel to reach agreements on briefing schedules, number and lengths of briefs, and other matters that concern the core issues involved in all or most of the now consolidated cases."

*Baystate Health Sys. v. Thompson*, 254 F. Supp. 2d 80, 82 (D. D.C. 2003). *See In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 886 F. Supp. 445, 475 n. 66 (E.D. Penn. 1995) ("In this capacity, [Coordinating Counsel] coordinated all court filings and discovery, and generally coordinated the litigation process to ensure that required tasks were performed. With respect to pretrial preparation, trial, and settlement, [Coordinating Counsel] shared strategic decision-making with [other counsel].").

Milberg Weiss is uniquely qualified to act as Coordinating Counsel by virtue of its resources, experience and track record in the area of class action litigation. Indeed, Milberg Weiss has spearheaded some of the largest and most complex class actions in history, such as *In re NASDAQ Market-Makers Antitrust Litig.* Civ 3996 (S.D.N.Y.), *In re Initial Public Offering Sec. Litig.*, Master File No. 21 MC 92 (S.D.N.Y.), and *In re Enron Corp., Sec. Litig.*, No. H-01-3624 (S.D. Tex.). Accordingly, the Court can rest assured that Milberg Weiss will similarly be capable of harmonizing the efforts of all counsel involved in this litigation. In addition, because it represents the movants with the largest financial interest in the PSLRA Claims, as demonstrated above, Milberg Weiss is strongly motivated to ensure that all of the California Actions, which are founded on common factual allegations, proceed efficiently and in lock-step. Accordingly, the Court should approve the Nations Lead Plaintiff Movants' selection of Milberg Weiss as Coordinating Counsel.

## CONCLUSION

For all the foregoing reasons, Movants respectfully request that the Court: (i) consolidate the California Actions; (ii) appoint the Nations Lead Plaintiff Movants as

Lead Plaintiff pursuant to the "PSLRA with respect to the California PSLRA Claims; (iii) approve the Nations Lead Plaintiff Movants' designation of a steering committee comprised of class members John A. Norden, Jeffrey Robins and Roderick L. Rohrer to represent the Nations Lead Plaintiff Movants as Lead Plaintiff; (iv) approve the Nations Lead Plaintiff Movants' selection of Milberg Weiss, pursuant to the PSLRA, as Lead Counsel of the PSLRA Claims; (v) appoint Milberg Weiss as Coordinating Counsel with respect to the California Claims; and (vi) approve The Nations Lead Plaintiff Movants' selection of The Rossbacher Firm as Liaison Counsel.

DATED: November 4, 2003

THE ROSSBACHER FIRM

By [signature]

HENRY H. ROSSBACHER
JAMES S. CAHILL
TALIN KHACHATURIAN
811 Wilshire Boulevard, Suite 1650
Los Angeles, Ca 90017-2666
Telephone: (213) 895-6500
Facsimile: (213) 895-6161

MILBERG WEISS BERSHAD
HYNES & LERACH LLP
MELVYN I. WEISS
STEVEN G. SCHULMAN
PETER E. SEIDMAN
One Pennsylvania Plaza
New York, NY 10119-0165
Telephone: (212) 594-5300
Facsimile: (212) 868-1229

**Proposed Lead & Coordinating Counsel**

RABIN, MURRAY & FRANK LLP
ERIC J. BELFI
275 Madison Avenue, 34th Floor
New York, NY 10016
Telephone: (212) 682-1818
Facsimile: (212) 682-1892

REINHARDT WENDORF & BLANCHFIELD
GARRETT D. BLANCHFIELD, JR
E-1250 First National Bank Building
332 Minnesota Street
St. Paul, MN 55101
Telephone: (651) 287-2100
Facsimile: (651) 287-2103

EMERSON POYNTER LLP
JOHN G. EMERSON
SCOTT E. POYNTER
1509 Louisiana, Suites C & D
Little Rock, AR 72202-5094
Telephone: (501) 907-2555
Facsimile: (501) 907-2556

LAW OFFICES OF BERNARD M. GROSS, P.C.
DEBORAH R. GROSS
ROBERT P. FRUTKIN
1515 Locust Street, 2nd Floor
Philadelphia, PA 19102
Telephone: (215) 561-3600
Facsimile: (215) 561-3000

Additional Plaintiffs Attorneys